**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICROSOFT CORPORATION,

        Plaintiff,

v.

EOLAS TECHNOLOGIES, INC.,

        Defendants.

No. 1:10-cv-3820

Judge Rebecca R. Pallmeyer

Magistrate Judge Geraldine Soat Brown

**<u>DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF LIABILITY FOR BREACH OF CONTRACT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF POINTS AND AUTHORITIES ................................................................. iii

I.      INTRODUCTION AND ARGUMENT SUMMARY ........................................1

II.     BACKGROUND ...............................................................................................3

     A.    The IE Litigation and Other Surrounding Circumstances ......................3

     B.    The Settlement and License Agreements.................................................4

     C.    The Texas Action.....................................................................................5

     D.    Microsoft's Suit .......................................................................................6

III.    LEGAL STANDARDS ....................................................................................7

IV.    ARGUMENT....................................................................................................8

     A.    There Is No Harm—Microsoft's Failure of Proof on This
           Element Requires the Denial of Its Motion. ...........................................8

          1.    Microsoft's unsupported allegation of harm to itself
                is insufficient as a matter of law. .................................................9

          2.    Microsoft's unsupported allegation of harm to third
                parties is insufficient as a matter of law....................................10

     B.    There Is No Breach—The Evidence Relevant to This
           Element Also Requires the Denial of Microsoft's Motion. ..................12

          1.    The covenant prohibits patent-infringement suits in
                which Microsoft software is alleged to satisfy an
                element of the infringement claims.............................................12

          2.    Because Eolas has not alleged—and will not
                allege—that Microsoft software satisfies any
                element of any infringement claim, Eolas has not
                breached—and will not breach—the covenant. ........................16

          3.    Microsoft's argument for an "indirect infringement
                through server software" breach is without merit.....................17

          4.    Microsoft's arguments for "interactive content
                availability" breaches are without merit. ..................................21

C.    There Is No Basis For the Extraordinary Relief That
      Microsoft Seeks. ...................................................................................................24

D.    There Is No Substantial Performance—Microsoft's Failure
      of Proof on This Element Also Requires the Denial of Its
      Motion......................................................................................................................25

V.    CONCLUSION..............................................................................................................25

**TABLE OF POINTS AND AUTHORITIES**

I.      INTRODUCTION AND ARGUMENT SUMMARY ....................................................1

II.     BACKGROUND ..........................................................................................................3

      A.      The IE Litigation and Other Surrounding Circumstances ...............................................................................3

*Eolas Techs. Inc. v. Microsoft Corp.*,
     399 F.3d 1325 (Fed. Cir. 2005)....................................................................................3

      B.      The Settlement and License Agreements ............................................4

      C.      The Texas Action........................................................................5

      D.      Microsoft's Suit .........................................................................6

III.    LEGAL STANDARDS ................................................................................................7

*D.S.A. Finance Corp. v. County of Cook*,
     801 N.E.2d 1075 (Ill. App. 2003) ...............................................................................7

*Hicks v. Peters*,
     10 F. Supp. 2d 1003 (N.D. Ill. 1998) .........................................................................7

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986)....................................................................................................8

*Outlaw v. Newkirk*,
     259 F.3d 833 (7th Cir. 2001) ......................................................................................8

*Sunstar, Inc. v. Alberto-Culver Co.*,
     No. 01-C-736, 2007 U.S. Dist. LEXIS 62135 (N.D. Ill. Aug. 22, 2007) ...................8

Fed. R. Civ. P. 56 ...................................................................................................................8

IV.    ARGUMENT ...............................................................................................................8

      A.      There Is No Harm—Microsoft's Failure of Proof on This Element Requires the Denial of Its Motion....................................8

*D.S.A. Finance Corp. v. County of Cook*,
     801 N.E.2d 1075 (Ill. App. 2003) ...............................................................................8

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986)....................................................................................................9

*Sunstar, Inc. v. Alberto-Culver Co.*,
 No. 01-C-736, 2007 U.S. Dist. LEXIS 62135 (N.D. Ill. Aug. 22, 2007) ..................................9

      **1.**        **Microsoft's unsupported allegation of harm to itself is insufficient as a matter of law.** .......................................................9

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ...................................................................................9

*Chicago United Indus. v. City of Chicago*,
 445 F.3d 940 (7th Cir. 2006) .....................................................................9

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...............................................................................9, 10

*Outlaw v. Newkirk*,
 259 F.3d 833 (7th Cir. 2001) .....................................................................9

*Sunstar, Inc. v. Alberto-Culver Co.*,
 No. 01-C-736, 2007 U.S. Dist. LEXIS 62135 (N.D. Ill. Aug. 22, 2007) ..................................9

Fᴇᴅ. R. Cɪᴠ. P. 56 ............................................................................................9

      **2.**        **Microsoft's unsupported allegation of harm to third parties is insufficient as a matter of law.** ......................................10

*Sunstar, Inc. v. Alberto-Culver Co.*,
 No. 01-C-736, 2007 U.S. Dist. LEXIS 62135 (N.D. Ill. Aug. 22, 2007) ...............................10

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .................................................................................11

*Chicago United Indus. v. City of Chicago*,
 445 F.3d 940 (7th Cir. 2006) ...................................................................11

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .................................................................................11

*Powers v. Ohio*,
 499 U.S. 400 (1991) .............................................................................11, 12

*Rawoof v. Texor Petroleum Co.*,
 521 F.3d 750 (7th Cir. 2008) ...................................................................11

*Thorogood v. Sears, Roebuck and Co.*,
 624 F.3d 842 (7th Cir. 2010) ...............................................................11, 12

*D.S.A. Finance Corp. v. County of Cook*,
 801 N.E.2d 1075 (Ill. App. 2003) ...........................................................12

iv

**B.** **There Is No Breach—The Evidence Relevant to This Element Also Requires the Denial of Microsoft's Motion.** ...............................................................................................**12**

*D.S.A. Finance Corp. v. County of Cook*,
    801 N.E.2d 1075 (Ill. App. 2003) ...........................................................12

    **1.** **The covenant prohibits patent-infringement suits in which Microsoft software is alleged to satisfy an element of the infringement claims.** ...................................**12**

*BMC Res., Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ........................................................13, 14

*REP MCR Realty, L.L.C. v. Lynch*,
    363 F. Supp. 2d 984 (N.D. Ill. 2005) .......................................................13

35 U.S.C. § 271 ..........................................................................................13, 14

*AGT Crunch Chicago, LLC v. 939 N. Ave Collection, LLC*,
    No. 07-C-2986, 2008 U.S. Dist. LEXIS 21039 (N.D. Ill. Mar. 18, 2008)...............................15

*Hagene v. Derek Polling Constr.*,
    902 N.E.2d 1269 (Ill. App. 2009) ...........................................................15

*Calabrese v. McHugh*,
    170 F. Supp. 2d 243 (D. Conn. 2001) ......................................................16

*Oce N. Am., Inc. v. Brazeau*,
    No. 09-C-2381, 2010 U.S. Dist. LEXIS 25523 (N.D. Ill. Mar. 18, 2010)...............................16

*Thirty and 141 L.P. v. Lowes*,
    565 F.3d 443 (8th Cir. 2009) ..................................................................16

    **2.** **Because Eolas has not alleged—and will not allege—that Microsoft software satisfies any element of any infringement claim, Eolas has not breached—and will not breach—the covenant.** ..............................................................**16**

*Duckworth v. Franzen*,
    780 F.2d 645 (7th Cir. 1985) ..................................................................17

    **3.** **Microsoft's argument for an "indirect infringement through server software" breach is without merit.** ...........................................................................**17**

*Lucent Techs. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)......................................................................18, 19

35 U.S.C. § 271...............................................................................................................19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................................21

      **4.**      **Microsoft's arguments for "interactive content availability" breaches are without merit. ...........................21**

*Thirty and 141 L.P. v. Lowes*,
  565 F.3d 443 (8th Cir. 2009) .............................................................................22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................................23

      **C.**      **There Is No Basis For the Extraordinary Relief That Microsoft Seeks. ...............................................................24**

*Bergh v. Washington*,
  535 F.2d 505 (9th Cir. 1976). Dkt. No. 61 at 21 ...............................................24

*Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*,
  713 F.2d 1477 (10th Cir. 1983) .........................................................................24

*McCormick Rd. Assocs. L.P. v. Taub*,
  659 N.E.2d 52 (Ill. App. Ct. 1995) ....................................................................24

*Powers v. Ohio*,
  499 U.S. 400 (1991)...........................................................................................24

*Franklin Point, Inc. v. Harris Trust & Sav. Bank*,
  660 N.E.2d 204 (Ill. App. Ct. 1995) ..................................................................25

*McKnight v. General Motors Corp.*,
  908 F.2d 104 (7th Cir. 1990) .............................................................................25

      **D.**      **There Is No Substantial Performance—Microsoft's Failure of Proof on This Element Also Requires the Denial of Its Motion. ...................................................25**

*D.S.A. Finance Corp. v. County of Cook*,
  801 N.E.2d 1075 (Ill. App. 2003) ......................................................................25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................................25

**V.**      **CONCLUSION** ....................................................................................25

NOW COMES defendant Eolas Technologies Inc. ("Eolas"), by its attorney David C. Van Dyke, and for its opposition to the motion for summary judgment of plaintiff Microsoft Corporation ("Microsoft"). Dkt. No. 88-1 ("M. Br."). In support thereof, Eolas states as follows.

## I.      INTRODUCTION AND ARGUMENT SUMMARY

Microsoft's motion for summary judgment of liability for breach of contract founders on two critical elements of its claim: harm and breach. In addition, its misguided allegations under both of those elements provide no basis for the extraordinary remedy that it seeks in this case.

*First*, there is no harm. If there were any doubts that this lawsuit constituted little more than a coordinated effort to disrupt Eolas' litigation in Texas, Microsoft's latest allegations of harm should put them to rest. Microsoft effectively drops its pretense that it has been harmed by the Texas Action (conspicuously offering not one citation to the record on that point), and asserts that it is in fact suing for an alleged harm to the Texas Action defendants—who are, according to Microsoft, now the real parties in interest. M. Br. at 17-21. And that alleged harm? Possibly-greater-than-necessary expenses in litigating the Texas Action. *Id.* at 20. There are a number of fatal flaws with this argument: 1) Microsoft's allegation of third-party harm is plainly false; 2) even if it were true, it does not suggest that the Texas Action defendants have suffered the kind of harm that could justify the injunctive relief that Microsoft seeks; and 3) critically, Microsoft's new allegation of third-party harm, like its old allegation of harm to itself, is unavailing because it is based entirely on attorney argument. In addition, Article III requires Microsoft to plead and prove a particularized injury to itself, even when suing for harm to third parties. In short, what the Court found in November remains true today: there is no record evidence of any harm supporting Microsoft's claims. That alone requires the denial of Microsoft's motion.

*Second*, there is no breach. The language of the restrictive covenant at issue is not ambiguous: it prohibits Eolas from asserting patent-infringement claims against a Microsoft customer in which the customer's own use of Microsoft software is alleged to satisfy an element of the asserted claims. This is the only reasonable reading of the covenant. Indeed, it is the reading originally adopted by Microsoft, and currently adopted by the Texas Action

defendants—whom Microsoft now asserts are the real parties in interest in this lawsuit. And when properly read in this way, it should be clear that Eolas has not breached the covenant. The complaint in Texas, the infringement contentions in Texas, and the disclaimers Eolas has offered in Texas and in this Court all demonstrate that Eolas has not sued any Texas Action defendant for its use of Microsoft software.

Microsoft offers two new theories to the contrary, but both are meritless. Microsoft's first new theory is based on the presumption that—for a few defendants allegedly using Microsoft server software—Eolas intends to argue that the use of such software satisfies the "indirect" element of certain claims for induced infringement. *Id.* at 7-11. Microsoft is flat wrong on this theory. Eolas has never made a distinction between direct and indirect infringement claims under the covenant, and has not alleged—and will not allege—that Microsoft software satisfies any element of any infringement claims, direct or indirect. Microsoft's second new theory is premised on a fundamental misreading of the covenant: that, rather than providing a narrow prohibition on suing Microsoft's customers for their use of Microsoft software, it provides an expansive obligation to ensure that future lawsuits have no impact on any website that any **unrelated party** might someday wish to visit using Microsoft software. *Id.* at 11-17. The plain language of the covenant precludes that theory.

*Third*, there is no basis for the extraordinary relief that Microsoft seeks. Microsoft asserts that it requires an "expedited" ruling on its request for an injunction issued against Judge Davis in Texas. *Id.* at 21. But in fact Microsoft's current allegations of harm and breach—even if they were supported and true—could not justify the relief that Microsoft seeks, for a number of reasons: 1) they provide no basis for sweeping aside the doctrines of comity and restraint implicated by Microsoft's proposed injunction; 2) they do not suggest that anyone has been irreparably harmed and deprived of a legal remedy—a prerequisite for injunctive relief; 3) they do not suggest breaches that are clear, definite, unequivocal, and specific—a prerequisite for specific performance; and 4) they *do* suggest that Microsoft's proposed injunction would require complicated monitoring of the Texas Action—again, making specific performance inappropriate.

## II. BACKGROUND

### A. The IE Litigation and Other Surrounding Circumstances

Eolas brought a patent-infringement suit against Microsoft in this District in 1999. Eolas' Responsive Statement of Facts ("RSOF") 6. While Microsoft struggles to characterize this as a "far-reaching" suit "stretching to [various operating] systems," M. Br. at 7, in fact—as the Federal Circuit made clear—Eolas simply "alleged that certain aspects of Microsoft's Internet Explorer (IE) product incorporate its invention," *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1328 (Fed. Cir. 2005); RSOF 14. While neither party disputed "the fact that operating systems are involved in the operation of computer programs," Eolas, the jury, and the courts all agreed that it was the IE browser—and not the operating system—that satisfied the elements of the infringement claim. *Eolas*, 399 F.3d at 1336-38; RSOF 16; RSOF Eolas Fact 22 ("E22").

Microsoft responded to this suit by engaging in vigorous anti-Eolas activity that went beyond defending against Eolas' infringement claims in this Court. For example, Microsoft worked with an industry group called the "W3C"—the "World Wide Web Consortium," an HTML standards-setting body—in an ultimately unavailing attempt to design the HTML standard so as to avoid Eolas' patented technology. RSOF E23. This industry group included, among other companies, Sun and Adobe. RSOF E23, E34. Microsoft also worked in its own name and through this same W3C group in twice attempting to invalidate Eolas' patent through reexamination in the PTO. RSOF E24. By mid-2007, however, it became clear that each of these projects was doomed to failure: the jury in the IE litigation had returned a $520 million verdict against Microsoft; Microsoft's attempts to design around Eolas' technology with the W3C had come to naught; and the PTO had rejected Microsoft's invalidity arguments in both reexaminations. RSOF E23-E25. In short, the circumstances giving rise to the Agreement reflect that—after eight years of fighting—Microsoft's back was finally against the wall, and it was in no position to demand "broad" and "far-reaching" settlement terms. M. Br. at 5-7; RSOF E9. And neither would Eolas have accepted them.

**B.     The Settlement and License Agreements**

As a result, Microsoft entered the Settlement and License Agreements with Eolas in August 2007. RSOF 7-8. The Agreements—which provide that they are to be read together—released the claims giving rise to the IE lawsuit, and provided Microsoft with a license to Eolas' patents going forward. RSOF 7-12. Eolas also covenanted not to sue Microsoft's customers under the licensed patents for using Microsoft software. RSOF 12. For its part, Eolas received a substantial sum of money—though less than the jury's $520 million, IE-based verdict—and, among other things, **assurances that Microsoft would do nothing to interfere with Eolas' enforcement of its patents against the rest of the industry going forward**. RSOF 11. Three of the Agreements' provisions are particularly pertinent here: the "releases" provision; the "challenges" provision; and the "covenant" provision.

[This section is intentionally redacted]

4

[This section is intentionally redacted]

These provisions together reflect two central purposes motivating the Agreements. First, the parties plainly contemplated that Eolas would continue to enforce its patents against other industry players in this space. Indeed, if it were otherwise Microsoft's promises to refrain from assisting other litigants going forward would have been unnecessary. RSOF 11. Second, and related to this point, whether looking back or going forward, Eolas released only those claims against these players that were based on their use of Microsoft software. In short, if Microsoft software is not alleged to satisfy an element of the asserted claims, then nobody has been "sue[d] . . . for their . . . using" such software, and the Agreements are not implicated.

## C.    The Texas Action

In accordance with the parties' understanding that additional enforcement actions against others operating in the interactive-Internet space would follow the Agreements, Eolas brought a second patent-infringement suit against twenty-three defendants in Texas in 2009. RSOF 27. These defendants include the makers of browsers, websites, and plug-ins that infringe Eolas' patents. RSOF E26. The defendants also include some of Microsoft's direct competitors—for example, Apple and Google develop the "Safari" and "Chrome" browsers, respectively, which actively compete with IE in this space. RSOF E26. Eolas has taken care, throughout that litigation, to ensure that none of its infringement allegations—both direct and indirect—are based, in whole or in part, on the use of Microsoft software. RSOF E10-E14. Indeed, the

5

complaint in Texas makes clear that no defendants have been sued for their using Microsoft software; the infringement contentions served in Texas make clear that no defendants have been sued for their using Microsoft software; and Eolas' repeated written and record disclaimers both in Texas and in this Court make clear that no Texas Action defendants have been or will be sued for their using Microsoft software. RSOF 58-65, E13. Indeed, Eolas has explicitly "disclaimed any accusation of infringement . . . when Microsoft software is used to satisfy any element of any claim calling for the use of software." RSOF 65.

The defendants in Texas are well aware of Eolas' covenant with Microsoft—indeed, Eolas endeavored to ensure that each of the Texas Action defendants had access to the document. RSOF E27. And each of the defendants has in fact pleaded defenses in the Texas Action based upon it. RSOF E5, E11. Significantly, however, the Texas Action defendants do not share Microsoft's expansive view of the covenant. To the contrary, they share Eolas' view that the covenant simply prohibits Eolas from, in Sun's words, "relying on Microsoft products to satisfy elements of its asserted claims." RSOF E7. Eolas has exchanged substantial correspondence with the Texas Action defendants on this issue, and has provided them with explicit disclaimers making clear that they have not been sued for their using Microsoft software. RSOF 58-65.

### D. Microsoft's Suit

Notwithstanding the fact that Microsoft was aware of the Texas Action from its inception, it waited some eight months to file this suit, in which it alleges breach of the covenant and seeks an injunction that would require this Court to manage the scope of the claims asserted by Eolas in Texas. RSOF E1, E21. Microsoft has changed its theory of the covenant with virtually every filing, variously asserting that it provides everything from, *e.g.*, a narrow prohibition on "suing parties on the basis of [their] use of Microsoft software" to, *e.g.*, an expansive obligation to ensure that "IE users . . . have free and unimpeded access to and enjoy the capabilities of [interactive] technologies embedded in any websites that IE users might ever visit." Dkt. No. 77, ¶ 20; Dkt. No. 66 at 7. Microsoft has also changed its theory of harm with virtually every filing, variously asserting that the Texas Action harmed its goodwill in the

6

Internet industry, injured its relationships with its customers, or—as it asserts now, in an entirely conclusory paragraph—deprived its server software of enhanced value. Dkt. No. 66 at 11; M. Br. at 19. Indeed, in this filing Microsoft offers for the first time a theory that it has standing to bring a suit in which the Texas Action defendants are the real parties in interest. M. Br. at 19-20.

The common thread through all of these constantly shifting allegations is that they are supported by nothing more than attorney argument. For example, as the Court found at a November hearing, there was "no record evidence of any harm to Microsoft at this point." RSOF E2. That statement is as true today as it was then—for Microsoft has yet to offer one shred of record evidence supporting its allegations of harm. RSOF E3-E4.

## III.   LEGAL STANDARDS

Microsoft brings only one claim in this case, and seeks only one form of relief: a permanent injunction for an alleged breach of contract. RSOF E1. To make out its breach-of-contract claim under Illinois law, Microsoft "must present facts showing (1) a valid and enforceable contract existed; (2) the plaintiff performed according to the contract; (3) the defendant breached the contract; and (4) the breach resulted in damages." *D.S.A. Finance Corp. v. County of Cook*, 801 N.E.2d 1075, 1079 (Ill. App. 2003); M. Br. at 4.  Further, to "be entitled to a permanent injunction under Illinois law, [Microsoft] must establish that it has a clearly ascertainable right, an inadequate remedy at law, and will suffer irreparable harm if the injunction does not issue." *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01-C-736, 2007 U.S. Dist. LEXIS 62135, at *17 (N.D. Ill. Aug. 22, 2007). Microsoft must further show that the balance of harms and equities favors an injunction. *Id.* at *17-18. This standard for a permanent injunction "is essentially the same as for a preliminary injunction"—which the Court has already considered and denied—"except that in seeking a permanent injunction, [Microsoft] must prove actual success on the merits rather than likelihood of success on the merits." *Hicks v. Peters*, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998).

Additionally, summary judgment is only appropriate if Microsoft "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a). Any doubts must be resolved in Eolas' favor. *Outlaw v. Newkirk*, 259 F.3d 833, 836-37 (7th Cir. 2001). Significantly, Microsoft may not rely on mere allegations in these circumstances. To the contrary, it must submit "significant probative evidence tending to support" its allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In the absence of such "significantly probative" evidence supporting each of the elements underlying Microsoft's action, its motion for summary judgment must be denied. *Id.* at 249-50.

## IV. ARGUMENT

### A. There Is No Harm—Microsoft's Failure of Proof on This Element Requires the Denial of Its Motion.

Microsoft's motion can be resolved on this straightforward point: it has offered not one shred of evidence that it has suffered any harm at all, let alone any irreparable harm. As noted, to make out its breach-of-contract claim, Microsoft "must present facts showing" that it has been harmed by the alleged breach. *D.S.A.*, 801 N.E.2d at 1079. Indeed, Microsoft concedes as much. M. Br. at 4 ("Microsoft [needs to show] that the breach has resulted in harm."). And to support its request for injunctive relief, Microsoft must further show that the harm it allegedly suffered is irreparable. *Sunstar*, 2007 U.S. Dist. LEXIS 62135, at *17. Microsoft's failure to present **any** factual evidence at this summary-judgment stage dooms its motion. Indeed, Microsoft's failure to point out specific facts supporting its allegations of injury calls into question this Court's Article III jurisdiction to hear Microsoft's breach-of-contract claim.

At the hearing on Microsoft's motion for preliminary injunction in November, the Court found that there was "no record evidence of any harm to Microsoft at this point." RSOF E2. Now, in its summary-judgment briefing, Microsoft argues that its claim of breach is supported by an alleged harm to itself and also by an alleged harm to the Texas Action defendants. M. Br. at 17-21. But these allegations are supported by nothing more than attorney argument, and this absence of significant probative evidence on an essential element of Microsoft's claim is fatal to its motion. *See Anderson*, 477 U.S. at 249-50.

1.      **Microsoft's unsupported allegation of harm to itself is insufficient as a matter of law.**

In its complaint, and also in its preliminary-injunction briefing, Microsoft's harm-related arguments focused on an allegation that the supposed breach caused damage to "its goodwill and its relationships with customers." Dkt. No. 77, ¶ 34. Microsoft now drops that argument, and alleges instead that the supposed breach "has deprived Microsoft's server software of . . . enhanced value" because, according to Microsoft, in the Texas Action Eolas has treated the use of Microsoft server software no differently from, *e.g.*, the use of Apache server software. M. Br. at 19. This allegation of harm to Microsoft suffers from at least three fatal flaws—each of which make it insufficient to support Microsoft's claims as a matter of law.

*First*, it is obviously false: Eolas' disclaimer that no defendant in the Texas Action is being sued for its use of Microsoft server software could only enhance the value of such software. Indeed, the fact that the Texas Action defendants have filed defenses based on their alleged use of Microsoft software confirms this fact. RSOF E5, E11.

*Second*, even if Microsoft's new allegation of "non-enhanced value" were true, it does nothing to suggest that Microsoft has suffered any **irreparable** harm, as required for the injunctive relief it seeks. RSOF E3; *Sunstar*, 2007 U.S. Dist. LEXIS 62135, at *17; *see also Chicago United Indus. v. City of Chicago*, 445 F.3d 940, 945 (7th Cir. 2006) ("[t]he normal remedy for breach of contract is an award of damages").

*Third*, and perhaps most critically, this latest allegation of harm to Microsoft is just that: nothing more than an allegation. Microsoft's summary-judgment argument that it has suffered harm—comprising a single paragraph in its brief—is supported by no evidence in the record. RSOF E2-E3. The law is clear that allegations unsupported by record evidence are insufficient at the summary-judgment stage. *See Anderson*, 477 U.S. at 249-50; *Outlaw*, 259 F.3d at 837; FED. R. CIV. P. 56(c). Indeed, Microsoft's conclusory and unsupported allegation of harm raises a serious question regarding whether it has established the "injury-in-fact" requirement for Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). As the Supreme

9

Court explained in *Lujan*, constitutional standing requires each federal plaintiff to demonstrate an injury that is both "(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotes omitted). Further, while "[a]t the pleading stage, general factual allegations of injury . . . may suffice," at the summary-judgment stage "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" supporting those allegations. *Id.* at 561 (internal quotes omitted). Microsoft has stubbornly insisted that it be permitted to rest on its "mere allegations" of harm at the summary-judgment stage, and the consequences of that choice are clear: Microsoft's motion for summary judgment must be denied.

### 2. Microsoft's unsupported allegation of harm to third parties is insufficient as a matter of law.

Implicitly conceding that there remains "no record evidence of any harm to Microsoft at this point," RSOF E2, Microsoft offers another new theory in its summary-judgment briefing: that it "has standing to sue Eolas for breach harming the intended beneficiaries of the Agreements" under Illinois law. M. Br. at 19. According to Microsoft, the Texas Action defendants are third-party beneficiaries of the Agreements, and the supposed breach has caused them "to incur substantial expense in defending claims regarding Microsoft products." *Id.* at 20-21. This new allegation of third-party harm suffers from at least four fatal flaws—each of which make it insufficient to support Microsoft's claims as a matter of law.

*First*, Microsoft's new allegation of third-party harm is, again, plainly false. The Texas Action defendants have expended no resources in defending imaginary allegations regarding their alleged use of Microsoft software. Eolas has never made such allegations, and has in fact specifically and repeatedly disclaimed them. RSOF 58-65, E13.

*Second*, even if Microsoft's new allegation of third-party harm were true, it does nothing to suggest that the Texas Action defendants have suffered any **irreparable** harm that might justify injunctive relief. RSOF E4; *Sunstar*, 2007 U.S. Dist. LEXIS 62135, at *17. Money

damages are certainly adequate to remedy an alleged harm of additional litigation expenses. *See Chicago United*, 445 F.3d at 945.

*Third*, Microsoft's new allegation of third-party harm is again supported by nothing more than attorney argument. Microsoft offers no affidavits, no depositions, no evidence of any kind showing that the Texas Action defendants have generated unnecessary litigation expenses responding to disclaimed allegations that their alleged use of Microsoft software infringes the claims asserted in Texas. M. Br. at 19-21; RSOF E4. And again, unsupported averments of harm are insufficient at this stage. *See Anderson*, 477 U.S. at 249-50; *Lujan*, 504 U.S. at 561.

*Fourth*, whether or not Illinois law permits Microsoft to sue for harm to third parties, Illinois law cannot supersede the constitutional requirement that Microsoft plead and prove a concrete and particularized harm to itself in order to establish standing in federal court. *See Lujan*, 504 U.S. at 560; *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756-57 (7th Cir. 2008). Microsoft thus cannot avoid showing harm to itself by asserting that it is suing for harm to others.[1] *See Powers*, 499 U.S. at 410-11.

Microsoft argues that its third-party-harm argument is supported by the Seventh Circuit's decision in *Thorogood v. Sears, Roebuck and Co.*, 624 F.3d 842 (7th Cir. 2010). M. Br. at 20-21. But that decision does not support Microsoft's position. Sears did not file a breach-of-contract action offering only unsupported allegations of harm to third parties; it filed a suit under the "All Writs Act"—which authorizes a federal court to issue all writs necessary in aid of its jurisdiction—to prevent a losing defendant from defying the Illinois court's pro-Sears judgment with "vexatious" and "near-frivolous" litigation in another forum. *Thorogood*, 624 F.3d at 843-

---

[1] As the Supreme Court explained in *Powers*, "[w]e have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: **The litigant must have suffered an 'injury in fact,'** thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute . . . ; the litigant must have a close relation to the third party . . . ; and there must exist some hindrance to the third party's ability to protect his or her own interests." 499 U.S. at 410-11 (emphasis added). And as the Seventh Circuit noted in *Rawoof*, rules relating to third-party-beneficiary suits "should not be confused with the jurisdictional doctrine of standing." 521 F.3d at 756-57.

11

44, 850. The Seventh Circuit unsurprisingly held that, in these circumstances, Sears could obtain an injunction to avoid "being harassed by repetitive litigation." *Id.* at 843, 854. *Thorogood* thus has no relevance to Microsoft's allegations in this case. *Thorogood* most certainly does not suggest that an unsupported and untrue allegation of harm to third parties is sufficient to establish a breach-of-contract claim on summary judgment. *See id.* at 843-44.

As a final point on this issue, Microsoft's new focus on an alleged harm to third parties begs the question: if the only harm Microsoft can discern is the possibility that some of the Texas Action defendants might have paid more to litigate the Texas Action than absolutely necessary, M. Br. at 20, then why is Microsoft suing for injunctive relief in this Court? Injunctive relief could never be an appropriate remedy for that alleged harm, and in any event, the Texas Action defendants—one of whom is represented by the same counsel representing Microsoft here—are fully capable of protecting their own rights in the Texas Action. RSOF E6; *see Powers*, 499 U.S. at 411. In short, if—as Microsoft now alleges—the scope of the Texas Action has simply generated some greater-than-necessary expenses for the Texas Action defendants, that issue should be addressed and resolved by Judge Davis in the Texas Action. RSOF E5.

**B.     There Is No Breach—The Evidence Relevant to This Element Also Requires the Denial of Microsoft's Motion.**

To make out its claim, Microsoft must also present facts showing that "the defendant breached the contract." *D.SA.*, 801 N.E.2d at 1079. Eolas agrees with Microsoft that, under Illinois law, contractual interpretation is a question of law amenable to resolution on summary judgment. M. Br. at 4. And when interpreted properly, it is clear that Eolas has not breached the covenant. RSOF E10-E14. This element thus also requires the denial of Microsoft's motion.

**1.     The covenant prohibits patent-infringement suits in which Microsoft software is alleged to satisfy an element of the infringement claims.**

[This section is intentionally redacted]

12

Quite simply, Eolas agreed not to sue a Microsoft customer under the Licensed Patents for the customer's use of Microsoft software. The ordinary meaning of these terms permits only one reasonable interpretation of this provision—it prohibits Eolas from bringing a patent-infringement suit against a Microsoft customer in which the customer's own use of Microsoft software is alleged to satisfy an element of the asserted patent-infringement claim. *See REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1019 (N.D. Ill. 2005). Indeed, the only conduct a patent-infringement plaintiff can sue a defendant "for" is satisfying the elements of one or more patent claims.                              [This section is intentionally redacted]

13

[This section is intentionally redacted]

That this interpretation is obviously correct is demonstrated by the fact that it is espoused by the Texas Action defendants whom Microsoft alleges the covenant was designed to protect. RSOF E7. For example, Adobe has conceded that the relevant question is whether "Eolas contends Microsoft products might be used to satisfy elements of asserted claims." RSOF E7. And Sun has likewise characterized the covenant as prohibiting Eolas from "relying on Microsoft products to satisfy elements of its asserted claims." RSOF E7. Given Microsoft's new assertion that these Texas Action defendants are the real parties in interest in this case, M. Br. at 19, these concessions should be dispositive of this issue. In addition, Microsoft itself has conceded, in past statements of its position to this Court, that Eolas' interpretation is correct. For example, in one responsive brief Microsoft admitted that the focus should be on whether Eolas was seeking "to get paid—again—for occasions when an end-user of IE practices the steps of its claimed methods." RSOF E8.[2]

[This section is intentionally redacted]

_____

[2] Microsoft's complaint also appears to reflect this interpretation of the covenant. [This section intentionally redacted]

Microsoft's preliminary-injunction brief likewise focused on whether "Eolas is suing Microsoft's customers in Texas . . . for the use of Microsoft products." RSOF E8. Indeed, even portions of Microsoft's summary-judgment brief appear to reflect this interpretation of the covenant. For example, at one point Microsoft tellingly describes the "perspective of the Agreements" as "the point of view that focuses on whether Eolas is suing for the *use* of Microsoft software." Dkt. No. 88-1 at 10.

[This section intentionally redacted] [3] RSOF 11. Indeed, Illinois law is clear that the Agreements must be construed "as a whole, giving effect to all terms of the contract," *see AGT Crunch Chicago, LLC v. 939 N. Ave Collection, LLC*, No. 07-C-2986, 2008 U.S. Dist. LEXIS 21039, at *8 (N.D. Ill. Mar. 18, 2008)—and any reading of the covenant that would reach suits *not*      [This section is intentionally redacted] would improperly render those limitations in § 9 contradictory and "meaningless or surplusage." *See AGT Crunch*, 2008 U.S. Dist. LEXIS 21039, at *9; RSOF 11. In short, the parties clearly intended that Eolas could continue to enforce its patents through suits against other players in this space, and Microsoft's expansive view of the covenant—which would preclude any suit that might have some impact on some third party using some piece of Microsoft software somewhere in cyberspace (that is, virtually every conceivable suit)—is plainly incompatible with that intent.

As a final note on the covenant's proper interpretation, it is worth pointing out that, with settlement agreements in particular, the factual "circumstances surrounding the transaction" are relevant to "ascertain[ing] the scope and extent of the claims released." *Hagene v. Derek Polling Constr.*, 902 N.E.2d 1269, 1272 (Ill. App. 2009); *see* M. Br. at 5. And the circumstances surrounding the Agreements demonstrate that, at the time of the settlement, Microsoft had its back to the wall—that is, it had every incentive and intention to settle for a narrow covenant-not-to-sue.[4] RSOF E23-24. This factual reality lines up nicely with the legal principle that "[r]estrictive covenants are narrowly construed and are not extended by implication to include

---

[3]   [This section intentionally redacted]

RSOF 11.

[4] Because Eolas was denied an opportunity to engage in any real discovery prior to responding to Microsoft's motion for summary judgment, the Court has agreed to assume for present purposes that Eolas' characterization of the surrounding circumstances is accurate and true. RSOF E9.

anything not clearly expressed in them."[5] *Thirty and 141 L.P. v. Lowes*, 565 F.3d 443, 447 n.3 (8th Cir. 2009); *see also Calabrese v. McHugh*, 170 F. Supp. 2d 243, 254 (D. Conn. 2001). Both the facts and the law thus require that the restrictive covenant at issue be given a narrow interpretation. To be sure, the reading advocated by Eolas requires no "narrowing" construction—it is simply the covenant's plain-language meaning, and a meaning ascribed to by the Texas Action defendants. As discussed further below, however, the reading advocated by Microsoft flies in the face of this obligation to interpret the covenant narrowly.

> **2.  Because Eolas has not alleged—and will not allege—that Microsoft software satisfies any element of any infringement claim, Eolas has not breached—and will not breach—the covenant.**

When the covenant is properly interpreted, it should be clear that, in filing and prosecuting the Texas Action, Eolas has scrupulously avoided breaching the covenant's prohibition on patent-infringement suits in which a Microsoft customer's use of Microsoft software is alleged to satisfy an element of the asserted infringement claims. This conclusion is confirmed by: Eolas' complaint in the Texas Action; Eolas' infringement contentions in the Texas Action; and Eolas' disclaimers in the Texas Action and in this Court.

*First*, Eolas' complaint in the Texas Action confirms that there is no breach. For one thing, the complaint makes no allegation of infringement for using Microsoft software. RSOF E10. For another, the complaint explicitly and repeatedly provides that infringement is alleged only with respect to acts engaged in "without authority." RSOF E10. And as both Microsoft and the Texas Action defendants recognize, their use of Microsoft software is "authori[zed]" under the covenant. RSOF E11; E7. Eolas' complaint therefore makes clear that Microsoft software is not alleged to satisfy any element of the infringement claims brought in Texas.

---

[5] Indeed, Illinois law goes so far as to give "the Court . . . discretion to 'blue pencil' or modify an overly broad restrictive covenant." *Oce N. Am., Inc. v. Brazeau*, No. 09-C-2381, 2010 U.S. Dist. LEXIS 25523, at *28 (N.D. Ill. Mar. 18, 2010).

*Second*, Eolas' infringement contentions in the Texas Action confirm that there is no breach. Eolas served some 23,000 pages of infringement contentions on the Texas Action defendants. RSOF E12. Microsoft previously highlighted the fact that a mere two of those 23,000 pages originally contained a reference to Microsoft software. But those two references were simple mistakes—corrected via correspondence upon discovery and before Microsoft cited them in its preliminary-injunction briefing. RSOF E12. Microsoft no longer argues that the Texas Action infringement contentions reflect any intent to sue for the use of Microsoft software. M. Br. at 7-17. Eolas' infringements contentions in Texas thus constitute some 23,000 pages of proof that no Texas Action defendant is being sued for its use of Microsoft software. RSOF E12.

*Third*, Eolas' many disclaimers confirm that there is no breach. Eolas is the master of its complaint and claims in Texas, and if Eolas chooses to proceed on infringement theories that do not call out the use of Microsoft software, that should end the matter. *See Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985) (noting that "the plaintiff is the master of his complaint," and may proceed on the theory of his choice). And that is in fact what Eolas has chosen to do. Through repeated assertions in both the Texas Action and in this Court, Eolas "has disclaimed any accusation of infringement . . . when Microsoft software is used to satisfy any element of any claim calling for the use of software." RSOF 65, 58-64, E13.

Therefore neither the filing nor the prosecution of the Texas Action constitutes any breach of the covenant.

### 3.    Microsoft's argument for an "indirect infringement through server software" breach is without merit.

Notwithstanding this conclusive evidence that no Texas Action defendant has been sued for using Microsoft software, Microsoft offers a new "indirect infringement through server software" theory of breach in its summary-judgment motion. M. Br. at 7-11. This theory goes as follows: Microsoft argues without evidentiary support that a few Texas Action defendants (allegedly Go Daddy and Perot Systems in particular) use Microsoft server software to host their websites. *Id.* at 8. These defendants have been accused of inducing infringement of certain

claims—which requires, Microsoft asserts, "(1) an underlying direct infringer, who performs every limitation of the claim, and (2) an affirmative act performed by the alleged inducer." *Id.* According to Microsoft, Eolas does not intend to allege that the defendants' use of Microsoft software satisfies the first "infringement" element of such claims, but does intend to allege that their use of Microsoft server software satisfies the second "inducement" element. *Id.* at 8-9. In short, Microsoft **assumes** that Eolas makes a distinction between claims of direct and indirect infringement, and intends to allege that Microsoft server software satisfies the "inducement" element of certain asserted infringement claims. *Id.* Microsoft is wrong.

Eolas has made no distinction between claims of direct and indirect infringement, and, as it has repeatedly emphasized, it is "refraining from accusing any activity in which Microsoft software perform[s] any element of any claim." RSOF E13. Period. To be sure, Eolas' claims of induced infringement require not only evidence of infringement, but also "evidence of culpable conduct, directed to encouraging another's infringement"—that is, evidence of inducement. *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009); M. Br. at 8-9. But the Court can rest assured, as Eolas has repeatedly confirmed in the records of both cases, that Eolas has not alleged—and will not allege—that the use of Microsoft server software (or any other Microsoft software) satisfies any element of its claims, including this additional element of its induced-infringement claims. RSOF 58-65, E13. Further, pointing to something other than Microsoft software for this "inducement" element will not be hard for Eolas to do. As the Federal Circuit's decision in *Lucent* indicates, the kinds of culpable conduct typically found to satisfy this element of induced infringement—such as, *e.g.*, "advertising an infringing use"—have little to do with server software. 580 F.3d at 1322.

It is instructive to examine the facts underlying this new centerpiece of Microsoft's summary-judgment motion. Prior to bringing the Texas Action, Eolas ran an Internet trace or examined the source code for each prospective defendant—and determined that each one used non-Microsoft server software in its infringing activities. RSOF E15. When six of the twenty-one remaining defendants asserted, in a filing to the Texas Court, that they "use[d] Microsoft server

18

software to operate their accused websites," Eolas immediately noticed these six defendants for Rule 30(b)(6) depositions on this topic.[6] RSOF E16. The protective order entered by Judge Davis in the Texas Action precludes Eolas from sharing the details of its discovery findings with Microsoft and this Court. RSOF E18. Suffice it to say, however, that this ongoing discovery is confirming the accuracy of Eolas' Internet traces and source-code investigations. RSOF 30, E15. And Judge Davis, unlike this Court, will be able to review and confirm these facts in Texas.

As representative pieces of evidence not subject to the protective order in Texas, Eolas can point the Court to press releases issued after recent Super Bowls by Go Daddy—an alleged server-software customer highlighted by Microsoft. RSOF 44, E19. One of the releases notes that Go Daddy "converted its much talked about Super Bowl commercial into nearly 2 million visitors" to its website, which was hosted *not* by Microsoft server software, but by "Akamai . . . Web delivery services" using Akamai server software. RSOF E19. The other, also citing Akamai's server products, explained that "Go Daddy's Super Bowl spots are explicitly designed to drive potential customers to its website." RSOF E19. This evidence critically undercuts Microsoft's arguments on two fronts: first, it demonstrates that the Texas Action defendants alleging sole use of Microsoft server software have not been forthcoming; and second, it demonstrates how Eolas can satisfy the "inducement" element of its induced infringement claims by, *e.g.*, pointing to the defendants' advertising activities, rather than to their server-software activities. RSOF E19; *Lucent*, 580 F.3d at 1322.[7] It also further confirms that the issues

---

[6] These six defendants include Go Daddy, Perot Systems, CDW, J.C. Penney, New Frontier Media, and Office Depot. RSOF E16. They do *not* include Adobe, Amazon, Apple, Citigroup, eBay, Frito-Lay, Google, JPMorgan, Playboy, Rent-A-Center, Staples, Sun, Texas Instruments, Yahoo!, and YouTube. RSOF E16.

[7] As the Federal Circuit explained in *Lucent*, "[e]vidence of active steps taken to induce infringement, such as advertising an infringing use, can support a finding of an intention for the product to be used in an infringing manner." 580 F.3d at 1322; *see also* 35 U.S.C. § 271(b). Eolas can thus make out its induced-infringement claims by showing: 1) a direct infringement; and 2) steps taken to induce infringement, such as advertisements "designed to drive potential customers to [the defendant's] website." RSOF E19. In no event will any Texas Action defendant's use of Microsoft server software be alleged to satisfy any element of either of those two induced-infringement prongs. RSOF 58-65, E13.

Microsoft raises in this Court are best resolved in Texas, where Judge Davis will have full access to Eolas' confidential discovery into the Texas Action defendants' relevant use of server software.

Given this evidence, and Eolas' clear and repeated disclaimers on this issue, there can be no doubt that Eolas is not, in Microsoft's words, "claiming some Texas Defendant is liable under Eolas's patents for their using Microsoft software." M. Br. at 7. Microsoft's argument to the contrary is based upon its own—mistaken—reading of Eolas' good-faith answers to a few of Microsoft's ambiguous RFAs. *Id.* at 8. For example, RFA 12 asks whether an injunction entered in the Texas Action could conceivably prevent any Texas Action defendant from serving a web page using Microsoft server software. RSOF 37. Eolas admitted that this was a possibility with respect to, *e.g.*, induced infringement of the "browser" claims because, as explained above, whether or not the Texas Action defendants use Microsoft server software is and always will be irrelevant to Eolas' allegations that those defendants have induced infringement of the "browser" claims. RSOF 58-65, E13; M. Br. at 8. Again, should it turn out that any Texas Action defendant in fact uses Microsoft server software in a relevant manner—which at this point appears doubtful, RSOF E15—Eolas will satisfy the "inducement" element of its "browser" claims against that defendant by something other than the use of Microsoft software, such as the defendant's advertising an infringing use for its website. RSOF 58-65, E13.

This point was clearly communicated to Microsoft in Eolas' RFA answers, which included the assurance: "[t]herefore, and consistent with these representations, Eolas is not asserting liability against any Texas Action defendant in instances when Microsoft software is used to satisfy an element of a claim." RSOF 37. To be clear, this holds true whether the claim is for direct or indirect infringement. The irony here is that, for Microsoft's insistence that no discovery was necessary prior to summary judgment, its principal argument is predicated upon a misreading of discovery it received from Eolas. M. Br. at 7-9. Meanwhile, discovery obtained in the Texas Action—and available for use only in that Action because of Court-ordered confidentiality restrictions—further establishes that Microsoft's "server software" arguments

20

lack any genuine or reliable factual basis.[8] RSOF E15-E19. Microsoft has thus failed to demonstrate that there are no genuine issues of material fact with respect to its "server software" theory of breach. *Anderson*, 477 U.S. at 249.

### 4. Microsoft's arguments for "interactive content availability" breaches are without merit.

In addition to its misguided "indirect infringement through server software" argument for breach, Microsoft offers three short arguments that it groups together as involving alleged "interactive content availability" breaches. M. Br. at 11-17. First, Microsoft argues that if a website may ever be visited by a user of Microsoft's Internet Explorer, then Eolas breaches the covenant by suing the provider of that website—even when that provider uses no Microsoft software. *Id.* at 12-13. Second, Microsoft argues that if an executable application (such as, *e.g.*, Adobe's "Flash") may ever be triggered by a user of Microsoft's Internet Explorer, then Eolas breaches the covenant by suing the developer of that executable application—even when that developer uses no Microsoft software. *Id.* at 14-15. Third, Microsoft argues that if a website may ever be visited by a user of Microsoft's Windows operating system, then Eolas breaches the covenant by suing the provider of that website—again, even when that provider uses no Microsoft software. *Id.* at 15-17. In short, Microsoft argues that, "so long as Eolas is seeking any form of relief under its patents because some Texas Defendant made interactive content available to a Microsoft customer, then Eolas is breaching the Agreements." *Id.* at 7. These arguments ignore the words of the covenant.

In addition to being entirely incompatible with §§ 8 and 9 of the Settlement Agreement, Microsoft's "interactive content availability" theories are completely unmoored from the

---

[8] Microsoft also briefly suggests, in its section on indirect infringement, that Eolas would breach the covenant by suing a Texas Action defendant for using, *e.g.*, Akamai server software if that defendant also happened to have some Microsoft server software somewhere on its system. Dkt. No. 88-1 at 11. That argument is easily dismissed. By definition, when a Texas Action defendant is sued for using Akamai server software, it is *not* sued for using Microsoft server software—and thus the covenant would not be implicated in that circumstance. RSOF 12.

language of the covenant. The covenant prohibits certain suits against Microsoft customers for **their** use of Microsoft software—the covenant does not concern itself with a non-defendant's use of Microsoft software. RSOF 12. And again, this restrictive covenant must be interpreted narrowly; it should not be "extended by implication to include anything not clearly expressed in [it]." *Thirty and 141*, 565 F.3d at 447 n.3. Microsoft's principal justification for these theories of breach—that an agreement with such affirmative obligations would be more valuable to Microsoft than a restrictive covenant without them, *see* M. Br. at 13-17—is little more than an attempt to extend the covenant by implication to cover what it clearly does not cover.[9]

Microsoft's "availability" theories of breach are also flawed at a much deeper level: they are in fact precluded by the plain language of the covenant itself, in two ways. *First*, the covenant explicitly provides that it reaches only suits **against**, *e.g.*, Microsoft's "customers . . . or end-users of" Microsoft software. RSOF 12. If the **defendant** is not a customer or user of Microsoft software, then the suit does not implicate the covenant. But Microsoft's "availability" theories, by definition, cover defendants who are not Microsoft customers, and who do not use Microsoft software—they simply make available interactive content that may someday be accessed by a non-defendant Microsoft customer. Such defendants are plainly not covered by the covenant. *Second*, the covenant also explicitly provides that it reaches only suits against Microsoft's customers "for their . . . using" Microsoft software. RSOF 12. Only **the defendant's own use** of Microsoft software is thus ever relevant under the covenant—some conceivable impact on an unrelated party's use of Microsoft software plays no role in the covenant's calculus. Microsoft's "availability" theories, in sharp contrast, are premised on the plainly incorrect assumption that any suit that might impact some unrelated party's use of Microsoft software triggers the covenant.

---

[9] It should also be noted that Microsoft's arguments on the alleged breadth and value that it intended to secure in the covenant relate to the factual circumstances surrounding the transaction, and are thus subject to the Court's agreement to assume, for the purposes of Microsoft's motion, that Microsoft had every incentive and intention to settle for a narrow covenant-not-to-sue. RSOF E9, E23-E24.

These flaws in Microsoft's "availability" theories are reflected in the only specific allegation of breach that Microsoft offers in this section of its brief: Microsoft suggests that the suit against Adobe breaches the covenant because Adobe distributes "Flash" and "Shockwave" software that is compatible with the Windows operating system. M. Br. at 14. But Microsoft does not argue, much less prove, that Adobe is a customer or end-user of Microsoft software who has been sued for using Microsoft software. And of course, as shown above, no Texas Action defendant—including Adobe—has been sued for using Microsoft software. Again, therefore, Microsoft has failed to demonstrate that there are no genuine issues of material fact with respect to its "availability" theories of breach. *Anderson*, 477 U.S. at 249.

While Microsoft's three "availability" arguments are all premised on the same misreading of the covenant, and thus necessarily fall together, it is worth noting that they each suffer particular flaws as well. For example, the "providing websites" theory assumes that "Texas Defendants' making their websites available" was the "exact activity" that "Microsoft paid for" in settling the IE litigation. M. Br. at 12. But of course that is obviously wrong. Using Microsoft software to visit a website is not the same activity as using non-Microsoft software to make a website available—those are two different infringements, and the IE litigation involved the first, but not the second. RSOF E22. Similarly, the "developing executable applications" theory assumes that "Microsoft already paid for" Eolas' "claims against executable application developers." M. Br. at 14. Again, that is obviously wrong. Using Microsoft software to visit a website is not the same activity as developing a non-Microsoft application embedded in a website—again, those are two different infringements, and the IE litigation involved the first, but not the second. RSOF E22. Finally, the "users of Windows" theory assumes that the use of any operating system could ever be relevant to a claim of infringement under the licensed patents. M. Br. at 16. But as Microsoft notes, that issue was addressed in the IE litigation—and resolved against Microsoft. RSOF 14-16, E22. In short, Microsoft has not paid for any of the claims that Eolas has brought in the Texas Action. And contrary to Microsoft's misguided assumptions, nothing in Eolas' RFA answers suggests otherwise. M. Br. at 11-17; RSOF 35-52.

**C.      There Is No Basis For the Extraordinary Relief That Microsoft Seeks.**

Microsoft argues that it "requires an expedited ruling from this Court" because, if it does not receive a permanent injunction narrowing the scope of the Texas Action soon, that litigation will move "beyond the point when this Court's ruling could provide Microsoft or the Texas Defendants with any relief." M. Br. at 21. This argument fails for numerous reasons, and in fact Microsoft's current allegations of harm and breach—even if they were supported and true—could not possibly justify the extraordinary relief that Microsoft seeks.

*First*, the inter-federal-court injunction that Microsoft seeks represents an extraordinary remedy that "require[s] more than the usual measure of restraint, and . . . should be granted only in the most unusual cases." *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976). Dkt. No. 61 at 21. Microsoft has not explained why this is such an unusual case that the doctrines of comity and restraint should be swept aside. *See id.*; *see also Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484-87 (10th Cir. 1983) (noting that where "restraints on other courts are contemplated," the movant is "required to make a strong showing that the remedy [is] necessary for the movant and that the disadvantageous effect on others [is] clearly outweighed").

*Second*, as noted above, any injunction (even one not directed to a sister court) requires a showing of irreparable harm and inadequate remedy at law. *See Sunstar*, 2007 U.S. Dist. LEXIS 62135, at *17. Microsoft's allegation that the Texas Action defendants have "incur[red] substantial expense in defending claims regarding Microsoft products"—setting aside that it is plainly false—does not show that those third parties have suffered any injury for which money damages would be inadequate. M. Br. at 21. And also as noted above, those parties are fully capable of protecting their own interests in the Texas Action. *See Powers*, 499 U.S. at 411.

*Third*, suits for enforcement of a contract via specific performance—such as this one—are subject to additional requirements in Illinois, including that the provision enforced be "clear, definite and unequivocal." *McCormick Rd. Assocs. L.P. v. Taub*, 659 N.E.2d 52, 54 (Ill. App. Ct. 1995); *see id.* ("Where a party seeks specific performance of a contract, the law requires a

greater deal of specificity than is demanded for other purposes."). Microsoft cannot possibly argue that the covenant clearly, definitely, and unequivocally requires Eolas to, *e.g.*, broadly ensure that "interactive content [is] available to Microsoft's end users." M. Br. at 11.

*Fourth*, Illinois law also holds that specific performance is inappropriate if it would require complicated monitoring of performance by the Court. *See Franklin Point, Inc. v. Harris Trust & Sav. Bank*, 660 N.E.2d 204, 206 (Ill. App. Ct. 1995); *McKnight v. General Motors Corp.*, 908 F.2d 104, 115 (7th Cir. 1990). Microsoft's request that this Court manage the scope of the claims asserted before Judge Davis in the Texas Action would improperly require such monitoring. RSOF E21.

These considerations point once again to the only prudent course of action before the Court: deny Microsoft's motion for summary judgment, and permit Judge Davis to address and remedy any possible harm to the Texas Action defendants in the Texas Action.

> **D.  There Is No Substantial Performance—Microsoft's Failure of Proof on This Element Also Requires the Denial of Its Motion.**

There is one final reason to deny Microsoft's motion for summary judgment: it fails to "present facts showing . . . [that Microsoft] performed according to the contract." *D.S.A.*, 801 N.E.2d at 1079. Microsoft simply offers the conclusory assertion that it "has performed its obligations under the Agreements, and Eolas has never argued otherwise." M. Br. at 4. But of course Eolas has argued otherwise; it has in fact filed a counterclaim alleging that Microsoft breached its obligations under the parties' Settlement Agreement. Dkt. No. 98, ¶¶ 37-52. Those claims will be addressed in greater detail elsewhere, but for present purposes the critical point is that Microsoft has offered no "facts showing" its performance—no affidavits, no deposition testimony, no discovery of any kind—and in the absence of record evidence supporting its allegations, Microsoft cannot make out its claim on summary judgment as a matter of law. *See Anderson*, 477 U.S. at 249; FED. R. CIV. P. 56(c).

## V.  CONCLUSION

Eolas respectfully asks that the Court deny Microsoft's motion for summary judgment.

Dated:  May 4, 2011                              Respectfully submitted,

                                           /s/ *David C. Van Dyke*
                                           David C. Van Dyke (#6204705)
Trisha K. Tesmer (#6276038)
CASSIDAY SCHADE LLP
20 N. Wacker Drive, Suite 1000
Chicago, IL 60606
Telephone: (312) 641-3100
Facsimile: (312) 444-1669
E-Mail:  dvandyke@cassiday.com
E-Mail:  tkt@cassiday.com

Mike McKool, Jr.
Douglas Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
E-Mail:  mmckool@mckoolsmith.com
E-Mail:  dcawley@mckoolsmith.com

Kevin L. Burgess
Joshua W. Budwin
Matthew B. Rappaport
MCKOOL SMITH, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
E-Mail:  kburgess@mckoolsmith.com
E-Mail:  jbudwin@mckoolsmith.com
E-Mail:  mrappaport@mckoolsmith.com

**ATTORNEYS FOR DEFENDANT,
EOLAS TECHNOLOGIES, INC.**