**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICROSOFT CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 10 C 3820 |
| | ) | |
| **EOLAS TECHNOLOGIES, INCORPORATED,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

In 1999, Eolas Technologies sued Microsoft Corporation in this district, alleging that Microsoft had infringed Eolas's Patent No. 5,838,906 ("the '906 patent") in "technology directed to providing interactive content on websites viewed by Web visitors using browsers."  The case was tried before Judge Zagel of this court in 2003, and Eolas prevailed: the jury found that Microsoft had infringed two claims of the '906 patent and had actively induced United States users of Internet Explorer to infringe one of those claims, as well.  Microsoft appealed the judgment and $520 million damages award to the Federal Circuit.  *See Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1332 (Fed. Cir. 2005).  That court vacated the judgment and remanded.  Then in August 2007, on the eve of a second lengthy trial, the parties entered into an agreement in which Eolas dismissed the lawsuit and granted a license to Microsoft in return for substantial consideration.  The License Agreement provides that disputes are to be resolved in this district.

In 2009, Eolas brought a patent infringement lawsuit against twenty-three defendants in the Eastern District of Texas ("the Texas Action"), asserting infringement of the patented technology previously at issue with Microsoft.  Microsoft is not a named defendant in the Texas Action, but several months after it was filed, Microsoft filed this lawsuit, alleging that Eolas's filing and maintaining the Texas Action is a breach of the 2007 License Agreement between Microsoft and Eolas.  The court denied Microsoft's request for a preliminary injunction against further proceedings

in Texas, and that litigation continued; the court takes judicial notice that in February of this year, a Texas jury declared the patent invalid, and that Eolas's post-trial motions are pending. In this court, Microsoft has moved for partial summary judgment of liability for breach of contract. For the reasons set forth here, the motion is denied without prejudice.

### FACTS AND PROCEDURAL HISTORY

**Parties**

Microsoft is a Delaware corporation with its principal place of business in Redmond, Washington. (Plaintiff's 56.1 Statement (hereinafter "Pltf.'s 56.1") ¶ 1.) Defendant Eolas Technologies, Inc. is incorporated in, and has its principal place of business in Texas. (*Id.* ¶ 2.) The parties agree that the court has subject matter jurisdiction over the case and personal jurisdiction over Eolas. (*Id.* ¶¶ 3,4.) They agree that venue is proper here, as well, though Eolas has urged that the dispute is best resolved before Judge Leonard Davis, who presided over the Texas litigation. (*Id.* ¶ 5; Defendant's 56.1 Statement (hereinafter "Def.'s 56.1") ¶ 5.)

**The Parties' Agreements**

In 1999, Eolas sued Microsoft for infringing the '906 patent. (Pltf.'s 56.1 ¶ 6.) After several years of litigation in this court and the Federal Circuit, the parties entered into a Confidential Settlement Agreement (the "Agreement") in which Eolas agreed to dismiss its lawsuit with prejudice and grant a license to Microsoft. (Agreement ¶¶ 6.1, 5.1.) The Agreement provided for a substantial payment from Microsoft to Eolas (*id.* ¶ 4.1) and for entry of a judgment against Microsoft in an interference proceeding pending in the United States Patent and Trademark Office. (*Id.* ¶ 7.1.) In addition, Microsoft agreed that unless it became a defendant in litigation or subject to an indemnification obligation, Microsoft would not challenge the validity of the '906 patent or any successor to that patent. (*Id.* ¶ 8.1) The Agreement also included provisions for mutual releases of claims against the parties and their customers, licensees, and affiliates. (*Id.* ¶¶ 9.1, 9.2.) Those releases covered all claims, known or unknown

2

> which either were raised or could have been raised, that arise out of or are in any way connected to the Action and underlying facts and circumstances asserted therein provided, however that such release and discharge is only to the extent that [Eolas's] claims are based in whole or in part upon Microsoft actions, products, and/or services or the use thereof.

(*Id.* ¶ 9.1; see also ¶ 9.2). The parties acknowledged certain provisions of California law that prohibit enforcement of a release of claims that the "creditor does not know or suspect" at the time of the release, but they expressly waived those protections. (*Id.* ¶ 9.2.) They agreed, further, to the exclusive jurisdiction of this court for enforcement of the agreement. (*Id.* ¶ 22.1.)

Under the License Agreement executed as part of their settlement, Eolas granted Microsoft a "non-exclusive, irrevocable, perpetual, non-transferable, fully paid-up, royalty-free, world-wide license" to use the '906 patent. (License Agreement, Ex. 2 to Pl.'s 56.1, ¶ 2.1.) Eolas further agreed that it would not

> sue any of [Microsoft]'s or its Affiliates' customers, developers, manufacturers, distributors . . . or end-users . . . for their making, using, selling . . . or distributing Licensee Products or practicing any method in connection with their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products.

(*Id.* ¶ 2.4.)

On October 6, 2009, the Patent Office issued U.S. Patent No. 7,599,985 ("the '985 patent"), a continuation of the '906 patent. (Pl.'s 56.1 ¶ 25.) Both the original patent and the continuation are covered by the License Agreement between Microsoft and Eolas. (*Id.* ¶ 26.) In this lawsuit, Microsoft alleges breach of the parties' Agreements, and seeks a declaratory judgment and an injunction against some of the claims Eolas asserted in the Texas Action. (Defendant's Additional Material Facts (hereinafter "Def.'s Add'l.") ¶ 1; Plaintiff's Reply to Eolas's Local Rule 56.1 Statement (hereinafter, "Pl.'s Rep.") ¶ 1.)

3

**Positions Taken in the Earlier Litigation**

Eolas's claimed invention, in the words of the Federal Circuit, "allows a user to use a web browser in a fully interactive environment." *Eolas Techs.*, 399 F.3d at 1328. As the court noted, Eolas contended in the earlier litigation that its invention "'was the first instance where interactive applications were embedded in Web pages.'" *Id.* at 1329. Microsoft contends the broad claims that Eolas made in the original litigation before this court are relevant to interpretation of the License. Thus, Microsoft points out that, in that earlier litigation, Eolas's expert witness recognized the importance of the patented technology to Microsoft, and characterized possible loss of access to that technology as having "devastating impact" on Microsoft's customer relations. (Pl.'s 56.1 ¶ 13.) Eolas argued, as well, that although Microsoft had asserted that non-infringing alternatives to the '906 patent were available, third parties had made public statements that Microsoft's loss of access to the '906 technology would have "dire consequences." (Pl.'s 56.1 ¶ 19.) Eolas prepared trial exhibits showing that Microsoft's Internet Explorer product infringed the patent by accessing "websites containing Quicktime, Flash, or Java Applet embedded objects." (*Id.* ¶ 14.) Similarly, in the original litigation, Eolas did not specifically allege that third-party websites themselves infringed, but did accuse, as infringing, Microsoft Internet Explorer's access to third-party websites containing interactive content. (Pl.'s 56.1 ¶ 23; ¶¶ 14, 23.) Eolas's infringement expert attempted to "illustrate" Internet Explorer's "infringing behavior" by reference to a "sampling of additional web sites." (Def.'s 56.1 ¶ 15, quoting report of Edward W. Felton.)

Consistent with Judge Zagel's construction of the patent's claims, the jury instructions that Eolas proposed for the earlier litigation focused on the browser as central to the infringing activity: "[I]t must be the browser, not the operating system, that must do the heavy lifting of identifying and locating the executable application." (Pl.'s 56.1 ¶ 16.) The instructions defined the term "executable application" in the patent to mean "any computer program code that is not the operating system or a utility, that is launched to enable an end-user to directly interact with data." (Def.'s 56.1 ¶ 16.)

Eolas nevertheless broadly claimed that Microsoft infringed by using the '906 technology "through all versions of its Windows OS products." (Pl.'s 56.1 ¶ 17.) At trial, in 2003, Eolas asserted that the accused products were versions of Microsoft Windows with Internet Explorer, and disputed Microsoft's contention that the term "utilized by the browser" meant that the browser did its job "without help from the operating system." (Pl.'s 56.1 ¶¶ 20, 22.) Eolas also asserted that although it was the Internet Explorer browser, not an operating system, that satisfied the elements of the infringement claim, the browser could infringe by "call[ing] upon or working in conjunction with . . . the operating system, so that the browser may identify and locate the needed executable application" as required by the patent claims. (Def.'s Add'l. ¶ 22; Pl.'s Rep. ¶ 22.) Microsoft suggests these references to the involvement of the operating system in the patented technology confirm that the License must be construed as barring the claims Eolas has asserted in Texas.

Eolas acknowledges having taken these positions, but urges that they do not support Microsoft's proposed expansive construction of the License. In its claim construction briefs in the earlier lawsuit, Eolas observed that the "preferred embodiment" of its invention "uses resources of the operating system," but pointed out that whether the browser works in conjunction with the operating system or with any other file or resource was "irrelevant" to its infringement claims. (Pl.'s 56.1 ¶ 21.) Eolas explains that the Windows Operating System ("OS") was relevant because at the time Eolas made this allegation, Microsoft's Internet Explorer product was being "bundled" and sold as part of the Windows OS; the accused product was nevertheless Internet Explorer (the browser), not Windows (the operating system). (Def.'s 56.1 ¶¶ 17, 22.) And, although the patented programs function with the help of the operating system, Judge Zagel concluded that the phrase "utilized by the browser" means "that the enumerated functions are performed by the browser," and that "[t]his is a fact-intensive inquiry." (Def.'s 56.1 ¶ 20.) Moreover, his claim construction order defined an "executable application" as "any computer program code, that is not the operating system or a utility, that is launched to enable an end-user to directly interact with data." (Def.'s 56.1 ¶ 21.)

5

Eolas admits that, in the earlier litigation, it asserted that Microsoft had induced infringement by developing and promoting web sites that cause users to infringe the '906 patent. Eolas points out, however, that, as Microsoft urged prior to the scheduled retrial, the large damages claim generated by this assertion would need to be revisited "in light of factual and legal developments" since the entry of the verdict. (Pl.'s 56.1 ¶ 24; Def.'s 56.1 ¶ 24.) Eolas nevertheless recognizes that the earlier litigation related to technology of significant value to Microsoft (and, it follows, that the license for that technology was of great value as well). Indeed, Microsoft worked with an industry group in 2003 to design the HTML standard in such a way as to avoid Eolas's patented technology. (Def.'s Add'l. ¶ 23.) And there were two reexamination proceedings challenging Eolas's patent, but it ultimately survived. (Pl.'s Rep. ¶ 24.)

**Texas Litigation**

More than two years after the parties settled their lawsuit in this court, on October 6, 2009, Eolas initiated a lawsuit in federal court in Texas against 23 Defendants, *Eolas Technologies, Inc. v. Adobe Systems, Inc., et al.*, No. 09 C 446 (the "Texas Action"). In its complaint in the Texas Action, Eolas accused each Defendant of infringement of each claim of the '906 and '985 patents. (*Id.* ¶¶ 27, 31.) The Defendants in that action are the makers of browsers, websites, and plug-ins alleged to infringe Eolas's patents; some of the Texas Defendants are direct competitors of Microsoft. (Def.'s Add'l. ¶ 26.) Eolas alleged that each Defendant engaged in direct infringement, contributory infringement, or inducement of infringement of the '906 and/or '985 patent by "making, using, selling, offering to sell, . . . without authority" (a) "web pages and content to be interactively presented in browsers"; (b) "software . . .that allows content to be interactively presented in and/or served to browsers"; and (c) "computer equipment . . . that stores, serves, and/or runs any of the foregoing." (*Id.* ¶ 29.)[1]

---

[1]     After the Texas court expressed concern about the large number of claims asserted (continued...)

6

Certain of the patent claims Eolas asserts in the Texas Action "read solely" on the "browser-side" and other claims solely on the "server-side" of the "recited action."  (Def.'s 56.1 ¶ 66.)  In Claim 1 of the '906 patent, Eolas claims a method for running an application program in a computer network, comprising at least one client work station and one network server "coupled to" the network.  (Pl.'s 56.1 ¶ 67.)  Claim 20 of the '985 patent claims a "method for serving digital information in a computer network environment having a network server . . . ," a claim that, according to Eolas, relates to what is done by the server.  (*Id.*  ¶¶ 68, 71.)  Eolas also asserts "browser claims," in which "browser" is a limitation and "plug-in claims," in which "executable application" is a limitation.  (*Id.* ¶¶ 69, 70.)

Eolas acknowledges that some of the Defendants in the Texas litigation are Microsoft customers or developers who use Microsoft software, and that the Texas Defendants can be deemed third-party beneficiaries of the License it entered into with Microsoft.  But Eolas asserts that it has not sued any of the Texas defendants for infringement for using Microsoft software.  (Def.'s 56.1 ¶¶ 30, 34.)  In fact, Eolas endeavored to ensure that each of the Texas Action Defendants had access to the covenant between Eolas and Microsoft.  (Def.'s Add'l. ¶ 27.)  Thus, although Eolas seeks damages and an injunction against the Texas Defendants for infringement of certain claims of the '906 and the '985 patents, the alleged acts of infringement are all defined as limited to acts in which the patent limitations are "satisfied by something other than a Microsoft product."  Eolas contends that it did not assert liability against any Texas Defendant in instances "in which Microsoft software is used to satisfy an element of a claim." (Def.'s 56.1 ¶¶ 35-37.)  Eolas acknowledges, as well, that it seeks damages from the Texas Defendants for indirect infringement resulting from the Texas Defendants' having served some web pages using Microsoft server

[1](...continued)
in the lawsuit, Eolas withdrew 16 of its original 61 claims.  (Pl.'s 56.1 ¶¶ 32, 33.)

software to visitors accessing the Texas Defendants' websites. Again, however, Eolas points out that it does not assert liability in any instance "in which Microsoft software is used to satisfy an element of a claim," and that it has disclaimed any accusation of infringement "when Microsoft software is used to satisfy any element of any claim calling for the use of software." (*Id.* ¶¶ 38, 39.) Eolas insists that its "infringement contentions in the Texas Action do not rely on the 'development tools' for performing any element of any claim of the patents-in-suit in the Texas Action." (*Id.* ¶¶ 41-43.)

Microsoft is not satisfied by this disclaimer. Microsoft asserts that Eolas sought damages for, and an injunction against, the Texas Defendants' creation of web sites developed with Microsoft development tools, or making such sites available to visitors using any browser to access those sites. (Pl.'s 56.1 ¶ 39, 41-43.) And, Microsoft observes, Eolas has refused to rule out the possibility of liability for infringement when a website provider takes any of the following steps:

- serves web pages to visitors who access the provider's website with Microsoft Internet Explorer (*id.* ¶ 45);

- uses Microsoft server software to serve web pages to visitors accessing the site with any browser (*id.* ¶ 46);

- makes available to visitors using any browser a website developed with licensed Microsoft development tools (*id.* ¶ 47);

- serves, to visitors using any browser, websites that include embedded objects that automatically invoke Microsoft's licensed executable applications or "plug ins" (*id.* ¶ 48);

- serves web pages to visitors accessing the website using any browser running in Microsoft Windows (*id.* ¶ 49).

Eolas also appears to have asserted claims against providers, developers, or distributors of authoring tools for embedded object formats which provide or distribute those tools for use in developing embedded objects to be served on web pages that are (1) hosted on servers running Microsoft server software or (2) served to visitors accessing the web pages using Microsoft Internet

Explorer.  (*Id.* ¶ 50.)  And Eolas claims infringement where any provider, developer, or distributor

of executable applications invoked by embedded objects in web pages

- provides or distributes those applications to be used by (1) visitors running any browser accessing web pages hosted on servers running Microsoft server software or (2) visitors accessing any web pages using Microsoft Internet Explorer or

- provides or distributes those applications when the web page accessed is hosted on servers running Microsoft server software, when the browser accessing the web page is Microsoft Internet Explorer, or both.

(*Id.*  ¶¶ 51, 52.)  Eolas admits that it has taken these positions in the Texas Litigation, but reiterates

that it does not assert liability in any instance in which Microsoft software is used to satisfy an

element of the claim.  (Def.'s 56.1 ¶¶ 45-52.)

In May 2010, one of the Texas Defendants, Perot Systems, attempted to confirm that Eolas

would not seek to impose liability against it where Microsoft servers use the Perot website, users

access Perot's website with a Microsoft browser, or users access Perot's website using a device

running a Microsoft operating system.  (Pl.'s 56.1 ¶ 53.)  Eolas responded almost immediately with

the words, "we disagree."  (*Id.* ¶ 54.)  Eolas explains that it did not agree with Perot's assumption

that the use of operating systems is somehow relevant to the License Agreement, but believes the

communication in fact demonstrates that the Texas Defendants do understand that allegations

against them are compatible with the language of the License Agreement.  (Def.'s 56.1 ¶ 54, citing

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction [61],

at 16.)

Another of the Texas Defendants,  Adobe Systems, Inc., asserted in a July 2010 motion that

the "vast majority of Adobe products accused [by Eolas] operate in conjunction with or within

applications or operating systems from Microsoft."  Adobe noted, further, that because Microsoft

so dominated the market for "browser systems and . . . client systems that operated with Adobe

products during the relevant time period," Eolas's settlement with Microsoft "should put the vast

amount of otherwise accused activity beyond the reach" of Eolas's allegations in Texas. (Pl.'s 56.1 ¶ 55.) Texas Defendant Oracle joined in Adobe's motion. In response, Eolas characterized Adobe's and Oracle's license-based defenses as "premature." (*Id.* ¶¶ 56, 57.) In correspondence with the Defendants in the Texas Action in August 2010 and again in January 2011, Eolas nevertheless confirmed that it was asserting patent claims for infringement only where the various limitations of the patent were satisfied by something other than a Microsoft product, and that it was not suing any Defendant for "use of Microsoft server software to satisfy an element of the claims of the asserted patents." (*Id.* ¶¶ 58-60.)

**Eolas's Statements in this Litigation**

In this litigation, as well, Eolas has confirmed that it "is not asserting liability against any Texas Action defendant in instances when Microsoft software is used to satisfy an element of . . . any claim calling for the use of software." (*Id.* ¶¶ 61, 65.) Counsel contends that no claim element in either patent is fulfilled by the operating system, but to the extent that a company or individual uses Microsoft products to satisfy a claim element, that company or individual is not liable to Eolas. (*Id.* ¶ 63, 64.) In fact, Eolas's attorney pointed out, the Texas Action would enhance the desirability of using a Microsoft browser or server over software furnished by one of Microsoft competitors, because users of Microsoft's products are shielded from exposure to Eolas's claims. (*Id.* ¶ 62, 63.)

**Evidence of Harm to Microsoft Resulting from the Texas Action**

As of November 2010, the court found no record evidence of any harm to Microsoft, and the only harm Microsoft has identified in its submissions to the court is arguably hypothetical: "Microsoft paid for a license for its server software, and if it has received no value for that license, it has been harmed." (Def.'s Add'l ¶ 2; Pl.'s Rep. ¶ 3.)

Microsoft also asserts that Eolas has brought claims against intended third-party beneficiaries of the Agreements, and that those third parties have incurred litigation expenses.

(Pl.'s Rep. ¶ 4.) Eolas's complaint in the Texas Action charges the Texas Defendants with engaging in infringing acts "without authority," but does not explain what it means by that phrase, and makes no mention of Microsoft or its software. (Pl.'s Rep. ¶ 10.) Notably, however, Defendants in the Texas Action have raised a number of defenses that demonstrate that they understand they are protected by Microsoft's license; thus, they allege license, implied license, express license, release, the "full compensation" rule, and, for at least one Defendant, a covenant not to sue. (Pl.'s Rep. ¶¶ 5, 11.) Of 23,000 pages of infringement contentions served by Eolas, only two contained any reference to Microsoft software, and Eolas immediately withdrew those inadvertent references. (Def.'s Add'l. ¶ 12.) Eolas represents repeatedly that it does not accuse any of the Texas Defendants of wrongdoing for "any activity in which Microsoft software perform[s] any element of any [patent] claim." (Pl.'s Rep. ¶ 13.) And, in connection with this summary judgment motion, Eolas has confirmed that the covenant with Microsoft provides a license for both direct and indirect infringement. (Def.'s Add'l. ¶ 14.)

Eolas asserts that, before initiating the Texas Action, it ran an Internet "trace" or source code examination on each of the Defendants named in Texas and determined that each used non-Microsoft server software in its infringing activities. (*Id.* ¶ 15.) Eolas points out, further, that when certain of the Texas Defendants asserted that they used Microsoft server software to operate their accused websites, Eolas noticed Rule 30(b)(6) witness depositions to confirm this. (*Id.* ¶¶ 16, 17.) One of the Texas Defendants, Go Daddy, uses non-Microsoft server software and has issued press releases indicating that Go Daddy gets delivery services using a network of servers from Akamai Technologies, not Microsoft. (*Id.* ¶ 19; Pl.'s 56.1 ¶ 44.)

## DISCUSSION

Summary judgment is granted if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56. Interpretation of a written contract is particularly amenable to summary

judgment, *Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006), but summary judgment is not appropriate where there are genuine issues of material fact with respect to the interpretation of a contract. *Keck Garrett & Assocs., Inc v. Nextel Comms., Inc.*, 517 F.3d 476, 484 (7th Cir. 2008); *Waterloo Furniture Components, Ltc. v. Haworth, Inc.*, 467 F.3d 641, 645 (7th Cir. 2006). The initial burden of demonstrating there is an absence of a genuine issue of material fact falls on the moving party. The court construes facts in favor of the non-moving party (here, Eolas), and resolves doubts about whether disputes exist in favor of the non-moving party, as well. *Outlaw v. Newkirk*, 259 F.3d 833, 836-37 (7th Cir. 2001).

Under Illinois law, to establish a breach of contract claim, the plaintiff must establish (1) the existence of a valid and enforceable contract; (2) performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting harm from that breach. *Horwitz v. Sonnenschein Nath and Rosenthal LLP*, 399 Ill. App. 3d 965, 973, 926 N.E.2d 934, 942 (1st Dist. 2010); *Reger Development, LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). It is undisputed that the License Agreement is a valid and enforceable contract. Eolas has suggested that Microsoft itself is in breach, but has not explained how; as this court explained in its order dismissing Eolas's counterclaim [150], Microsoft's filing of this lawsuit does not constitute a breach. The more difficult issues are whether Microsoft has established that Eolas's filing of the Texas litigation violates the agreement, and whether Microsoft has been harmed. For the reasons explained here, Microsoft has not satisfied the court that it is entitled to judgment as a matter of law on these issues.

## I.     The License Agreement and the Texas Allegations

The License Agreement broadly authorizes Microsoft to use the '906 patent in conjunction with making, using, selling, or distributing Microsoft software and services and to "practice any method in connection therewith." (License Agreement ¶ 2.1.) The License Agreement further bars Eolas from suing certain third parties on certain claims. Specifically, Eolas agreed that it would not

sue any of Microsoft's

> customers, developers, manufacturers, distributors, resellers, wholesalers, retailers or end-users of Licensee Products under the Licensed Patents for their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products or practicing any method in connection with their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products.

(License Agreement ¶ 2.4.)

As Microsoft reads these two provisions of the License Agreement, they require the conclusion that there can be no lawsuit challenging the use of Microsoft products under the Eolas patents, regardless of whether or not a Microsoft customer or end-user is a named defendant. (Pl.'s Mem. at pp. 5-7.) Microsoft urges that the License it purchased grants it the right to use Eolas's patented technology in conjunction with any of its software; that right is essentially worthless, Microsoft argues, if Eolas is free to sue and enjoin other, non-Microsoft parties from delivering interactive Internet content available to Microsoft's end users. Eolas contends that the License Agreement does not support the expansive interpretation that Microsoft proposes.

### A.    Interpretation of the License Agreement

When construing a settlement agreement, the court's duty is to give effect to the parties' intent as determined from the plain and ordinary meaning of the contract language. *Gibbs v. Top Gun Delivery and Moving Servs., Inc.*, 399 Ill. App. 3d 765, 772, 928 N.E.2d 503, 509 (1st Dist. 2010), citing *Henderson v. Roadway Express*, 308 Ill. App. 3d 546, 548, 720 N.E.2d 1108, 1110 (4th Dist. 1999). Courts ordinarily construe contract terms according to their plain meaning. *Village of Glenview v. Northfield Woods Water & Utility Co., Inc.*, 216 Ill. App. 3d 40, 49, 576 N.E.2d 238, 245 (1st Dist. 1991).

In interpreting the language at issue in this case, Microsoft urges the court to consider the broad nature of the allegations that Eolas made in its earlier litigation in this court. Those broad allegations, in Microsoft's judgment, militate in favor of a similarly broad construction of the license

13

language at issue in this. (Pl.'s Mem. at p. 6-7.) Indeed, Illinois law permits the court to consider the objective circumstances out of which the settlement agreement arose. *See Hagene v. Derek Polling Constr.*, 388 Ill. App. 3d 380, 382, 902 N.E. 2d 1269, 1272 (5th Dist. 2009) (collecting cases). The court may interpret the language of the agreement in light of the dispute that was being settled and of the positions the parties were in at the time they entered into the agreement. *Intersport v. National Collegiate Athletic Ass'n*, 381 Ill. App.3d 312, 319, 885 N.E.2d 532, 539 (1st Dist. 2008). The court is not prepared, however, to conclude that the nature of the dispute that the parties were settling requires the very broad reading for which Microsoft argues. Factors relevant to settlement include considerations that may have little to do with the allegations presented to the court. The parties undoubtedly considered the likelihood of prevailing before a jury, the difficulties and expense of litigation, and the likelihood of delay and further appeals. Expectations regarding other emerging or developing technologies may also have been relevant. Eolas, for its part, insists that it was Eolas, not Microsoft, that had the upper hand in the negotiations, and that Microsoft was not in a position to negotiate the very broad contract interpretation for which it now argues. Microsoft resisted discovery on this question, and on this motion the court must construe the record in the light most favorable to Eolas. The court therefore assumes that in negotiating the Agreement and License, Microsoft recognized that it was facing a possible second large damages award. In short, Microsoft's bargaining position was not so obviously substantial that the court should assume Eolas was prepared to relinquish patent infringement claims against any provider whose content may be accessed by any end user of a Microsoft product.

Moreover, the court is not certain that the earlier lawsuit was as obviously far-reaching as Microsoft now insists. The Federal Circuit characterized Eolas's allegations in that earlier case as a claim "that certain aspects of Microsoft's Internet Explorer . . . incorporate its invention." *Eolas Techs.*, 399 F.3d at 1328. Microsoft points out that Eolas's trial exhibits in the earlier suit identified "third-party (non-Microsoft) websites containing Quicktime, Flash, or Java Applet embedded

objects," (Pl.'s 56.1 ¶ 14), but as Eolas explains, those trial exhibits were only presented to illustrate the nature of the infringement by Internet Explorer. Eolas did not allege that "websites containing Quicktime, Flash, or Java Applet embedded objects" themselves infringed. (Def.'s 56.1 ¶ 14.) To credit Microsoft's interpretation–and conclude that Eolas is barred from bringing *any* infringement suits under its patents that might affect Microsoft customers or end-users—appears to transform the covenant not to sue to a waiver of Eolas's right to sue *any* web hosts or developers who provide Internet content using Eolas' patents. Such an interpretation would expand the covenant not to sue beyond its plain language, which bars Eolas from bringing a patent-infringement lawsuit against a Microsoft customer, developer, distributor or end-user when the use of Microsoft software is the alleged infringement. In accordance with that plain language, determining whether the Texas Action is a breach will depend on whether Eolas is suing a Microsoft "customer, developer, manufacturer, distributor, reseller, wholesaler, retailer, or end-user" in that action (License Agreement ¶ 2.4)—not whether the Texas Action somehow affects the ability of Microsoft's customers or its end-users to access third party content.

### B. The Texas Action

Eolas insists the Texas Action does not violate the covenant. Eolas urges that its claims in Texas are not based "in whole or in part" on the use of Microsoft software, and that it makes no distinction, for purposes of the license, between "direct" and "indirect" infringement. To ensure that its Texas complaint did not exceed the scope of its rights under the license, Eolas asserts it first performed a "trace" to determine that the Defendants named in the Texas action all use non-Microsoft server software. Eolas also advised the Texas Defendants of the language of the covenant. If the Texas Defendants themselves are not customers or users of MS software, the Texas Action does not implicate the covenant. For example, Eolas asserts, Go Daddy uses "Akamai software" in the indirect infringement that, Eolas alleged, resulted from its SuperBowl commercials. On its face, Eolas's complaint in the Texas Action does not make any allegation of

infringement based on the use of Microsoft software. (Def.'s Add'l. ¶ 10.) And, as described earlier, Eolas offered explicit disclaimers that it was not basing any contentions of infringement on use of Microsoft products or practicing any method in connection with such use.[2] As Eolas points out, in each allegation within the Texas Action complaint, the Defendants are accused of infringing the patent "without authority" (Complaint, Ex. 23 to Pl.'s 56.1 ¶¶ 32-54), which Eolas contends the Texas Action Defendants understand to mean that Microsoft software is authorized and not part of the suit. (Def.'s Mem. at p. 16.) To the extent that they were engaged in infringement by means of, or in connection with, their use of Microsoft products, the Texas Defendants were free to move to dismiss the Texas Action in reliance on that language.

Microsoft alleges that this is not completely true, and that Eolas has admitted to suing Defendants in the Texas Action based on the use of Microsoft software, specifically Go Daddy and Perot Systems. (Pl.'s Mem. at pp. 7-8.) In all, six Defendants in the Texas Action filed notice that they "use[d] Microsoft server software to operate their accused websites." (Def.'s LR 56.1 Additional Facts ¶ 16.) The accuracy of this assertion was disputed, however, and at the time this motion for summary judgment was briefed, the parties in Texas were engaged in discovery under seal. (Protective Order, Ex. 1 to Def.'s LR 56.1.) For example, Eolas provided evidence that one of these six Defendants who claims to use Microsoft server software—Go Daddy —actually has indicated in the past its use of non-Microsoft server software. (Def.'s LR 56.1 Additional Fact at ¶ 7.)

Eolas contends that if Go Daddy, or other Defendants in the Texas Action, are infringing Eolas's patents but are doing so without using Microsoft's products, Eolas may challenge that

---

[2]      *See, e.g.*, Def.'s LR 56.1 ¶¶ 58-59 (quoting Eolas' correspondence with Texas Action defendants stating that infringement claims against the defendants are only for actions that do not include Microsoft products/software); ¶ 61 (Eolas stating in its response to Microsoft's First Set of Request for Admission that it is not asserting liability against Texas Action Defendants where Microsoft software is involved).

conduct without running afoul of the agreement. Notably, Microsoft itself has acknowledged that the covenant does not preclude Eolas from suing other industry players, and specifically agreed that it would take no position in such litigation. (Agreement ¶ 8.1.) Microsoft observes in its Reply that Eolas retained "the right to continue to enforce its patents against the many other interactive content instances on the Web in which Microsoft software is not involved." (Microsoft's Reply in Support of Summary Judgment [127] ("Microsoft's Reply") at 5.) Microsoft acknowledges, further, that Eolas remains free to challenge, for example, the operation of a website "hosted by a non-Microsoft server for visits by Safari or Firefox running on Apple's operating system . . . ." (*Id.* at 7 n.3.) As the court understands Microsoft's position, the host of that non-Microsoft server would be immune, under the language of the agreement, even if it infringed Eolas's patent, so long as the only visits to that server were made by users of Internet Explorer, running on Windows.[3] Without endorsing that interpretation of the agreement, the court concludes that Microsoft itself recognizes that the covenant does not require dismissal of every claim in the Texas Action.

In short, Microsoft has asked this court to enjoin the Texas lawsuit, but Microsoft's own submissions demonstrate that such an order would paint with too broad a brush. Even in Microsoft's view, Eolas was free to sue Texas Defendants who distribute executable applications used on non-Microsoft operating systems, and to sue non-Microsoft website operators for visits by non-Microsoft browsers running on an operating system other than Windows. Eolas disputes that the operating system used by a visitor to an infringing site has anything to do with the infringement claim, but there is no basis for the conclusion that the Texas lawsuit was improper *in toto.*[4] The

---

[3] It is difficult to see how the license has any application in that situation, in which the infringing activity is that of an entity not being sued by Microsoft.

[4] Microsoft did not file this lawsuit until eight months after the Texas litigation began. The court is cautious about drawing inferences from this delay, but it at least suggests that the Eolas complaint on its face does not implicate the covenant. Instead, perhaps, the alleged violation became clear only during the course of discovery and motion practice.

Texas Defendants are aware of the License Agreement and were free at any point to seek dismissal of the Texas Action in reliance on that language. In fact, as Microsoft points out, the Texas Defendants have themselves urged that the settlement "should put the vast amount of otherwise accused activity beyond the reach of this follow-on case." (Microsoft's Reply at 12.) It is not clear to this court that Eolas could challenge that assertion. The problem for Microsoft, in a motion for summary judgment, is that "the vast amount" is not the same as "all."

At least as of the timing of Microsoft's motion for summary judgment, it was premature to determine whether the Texas Action constitutes a breach of the License Agreement, as that question turns to a substantial degree on whether those Defendants may fairly be characterized as customers of Microsoft. Eolas has offered repeated assurances that if it becomes clear that Microsoft software is a component of any infringement claim, Eolas will promptly drop that claim in accordance with the plain language of the License Agreement. (*See, e.g.,* Def.'s Mem. at 18.) The court concludes that Microsoft is not entitled to judgment as a matter of law on its claim that Eolas's Texas lawsuit is a breach of the license agreement.

This conclusion should not be read as unqualified support for Eolas's interpretation of the agreement, however. The court is puzzled, for example, at Eolas's unwillingness to acknowledge that certain of the activities identified in bullet points on pages 8 and 9 of this opinion likely fall within the license. And Microsoft's objection to Eolas's "inducement of infringement" theory appears to have traction. Eolas has suggested that in the event that discovery reveals a Texas Action Defendant does use Microsoft software, Eolas might still be able to proceed against that Defendant: under Eolas's theory, a Texas Defendant who uses Microsoft software to host a website with content that utilizes Eolas' patent might nevertheless be liable, via its advertising, for inducing users of non-Microsoft browsers to visit the site. (Eolas's Mem. at 19-20.) As Microsoft urges, the hosting of a website on Microsoft server software is fully licensed conduct (License Agreement, ¶ 2.1), and advertising used to draw persons to that site—regardless of what type of browser they are using—is

18

"practicing any method in connection with" that licensed conduct, a practice for which Eolas has promised not to sue. (*Id.* at § 2.4.; Microsoft's Reply at 5.)

## II.     Harm

Eolas argues that Microsoft's breach of contract claim fails for the independent reason that Microsoft has suffered no cognizable harm as a result of the Texas Action. Having concluded that disputes preclude summary judgment on the issue of contract breach, the court need make only brief comment on this issue.

A showing of injury is a necessary element for a claim of breach of contract. *Horwitz*, 399 Ill. App. 3d at 973, 926 N.E.2d at 942 (citing *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732, 911 N.E.2d 378, 397 (1st Dist. 2009). Microsoft is correct that it need not establish its specific losses on this motion, which seeks summary judgment on the issue of liability only, but the absence of any measurable harm to Microsoft as a result of the Texas litigation is noteworthy. Microsoft's arguments on this score are not compelling. Microsoft asserts that Eolas has "diminished the value that Microsoft obtained under the [License Agreement]" by filing and maintaining the Texas Action (Microsoft's Mem. at 18-19)–an argument that presumes Microsoft's expansive interpretation of the License Agreement is correct. Assuming that it is, the court would expect Microsoft to make a concrete showing that its business has been harmed by Eolas's activities–some evidence of loss of good will, injury to customer relations, or loss of the enhanced value that its server software should enjoy as a result of the license. No such showing has been offered here.

Microsoft is offended that Eolas "has been paid" handsomely for the license Microsoft negotiated and urges that Eolas is not entitled to seek payment again in instances in which Microsoft software has been used. Microsoft may well be correct that Eolas is somehow "double dipping," and has no right to do so; but unless any recovery for Eolas in the Texas litigation comes from Microsoft's own pockets (or its bottom line), it is not clear that Microsoft has standing to right this perceived wrong. The parties appear to agree that the Texas Defendants are third-party

beneficiaries of the license agreement. In fact, Eolas has provided information about the license agreement to those Defendants and vows to withdraw any claims that run afoul of it. Its commitment to do so demonstrates the value of the license and enhances Microsoft's competitive position, says Eolas; customers who want to avoid litigation have an incentive to use Microsoft server software. Microsoft contends the Texas Defendants should never have been sued, but on this record, there is no showing that the Texas Defendants have argued for dismissal of that case in its entirety on the basis of the license or challenged Microsoft's failure to protect them.

Instead, several of the Texas Defendants settled the lawsuit with Eolas. The remaining Defendants challenged the validity of Eolas's patent–and they prevailed. If it sticks, their victory in the Texas lawsuit arguably puts them in a better position than they would have been in, had this court enjoined any portion of the lawsuit in Texas. Microsoft has standing to sue for harm to third-party beneficiaries, but it has no standing to seek a stay of litigation that frees its customers to do business with other software providers.

## **CONCLUSION**

Plaintiff Microsoft's motion for summary judgment [86] is denied.

ENTER:

Dated: June 1, 2012

_____
REBECCA R. PALLMEYER
United States District Judge